110 F.Supp. 273 (1953)
INTERSTATE COMMERCE COMMISSION
v.
UNITED VAN LINES, Inc., et al.
Civ. A. No. 7117(1).
United States District Court E. D. Missouri, E. D.
Findings and Conclusions December 31, 1952.
Final Judgment February 25, 1953.
*274 George L. Robertson, U. S. Atty., and Herbert H. Freer, Asst. U. S. Atty., St. Louis, Mo.; and Leo H. Pou, Atty. Interstate Commerce Commission, Washington, D. C., and D. R. Partney and H. J. Simmons, Attorneys, Interstate Commerce Commission, Kansas City, Mo., for plaintiff.
B. W. LaTourette and Gregory M. Rebman, St. Louis, Mo., for defendant, and for intervenor.
MOORE, Chief Judge.
This cause having come on for trial before the Court, upon the pleadings of the plaintiff and the defendant, upon a stipulation entered into by the parties, and upon the depositions of certain witnesses and the testimony of other witnesses before the Court, and the parties thereafter having submitted briefs, the Court, upon consideration of the said pleadings, evidence, and briefs, now makes and enters the following:

Findings of Fact

I
The defendant, United Van Lines, Inc., is a corporation having its office and principal place of business at St. Louis, Missouri, and is a common carrier by motor vehicle engaged in the transportation of property by motor vehicle in interstate commerce, for compensation. The defendant is the holder of a certificate of public convenience and necessity issued to it by the Interstate Commerce Commission and dated July 16, 1945, whereby the defendant was and is authorized to engage in the transportation of
"Household goods, as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, over irregular routes, between points and places in the United States".

II
The definition of "household goods" referred to in the defendant's said certificate embraces three classes or types of property, as follows:
(1) Personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such dwelling;
(2) Furniture, fixtures, equipment and the property of stores, offices, museums, institutions, hospitals, or other establishments when a part of the stock, equipment, or supply of such stores, offices, museums, institutions, hospitals, or other establishments;
(3) Articles, including objects of art, displays, and exhibits, which because of their unusual nature or value require specialized handling and equipment usually employed in moving household goods.

III
Purporting and claiming to operate under and by virtue of the said certificate, the defendant has for several years been engaged in certain transportation and operations which the plaintiff contends are not within the scope of the operating authority granted by the said certificate. The following described shipments, which the defendant admits it transported, are the instances of which the plaintiff has complained and describe the transportation and operations complained of, as well as the circumstances under which said transportation and operations occurred insofar as said circumstances were developed by the evidence of record in the instant case:
Shipment No. 1: New furniture, transported from Penn Furniture Company, Altoona, Pennsylvania, to Mengel Company, Louisville, Kentucky. The transportation was not incidental to a change of location of either company. The consignor was a distributor of new furniture and the consignee was a manufacturer of furniture and other wood products.
Shipment No. 2: Shuffleboards, transported from Jemwood Shuffleboard Co., Los Angeles, California, to Patton Music Company, Las Vegas, Nevada, to which the articles had been sold. The transportation was not connected with or incidental to a change in location of the consignor's place of business, but was incidental to an ordinary transaction between a buyer and a seller.
Shipment No. 3: Used coin-operated roll-down machines (commonly called "pin-ball machines"), transported from Frontier Novelty Company, Niagara Falls, New *275 York to Cleveland Coin Machine Exchange, Cleveland, Ohio, incidental to a sale of the property by the consignor to the consignee.
Shipment No. 4: Cafeteria and kitchen equipment, transported from Monarch Store Fixture Co., Cleveland, Ohio to Mojud Hosiery Co., Long Island, New York, incidental to a sale of the equipment by the consignor to the consignee.
Shipments Nos. 5, 6, 7 and 8: Microfilming equipment previously sold or leased by Eastman Kodak Company to its subsidiary, Recordak Corporation, and, on the occasions in question, transported by the defendant from an office of Recordak in another state to the Eastman factory at Rochester, New York, for reconditioning. The transportation was of part of the stock of the consignor in each instance, but had no connection with a movement of its place of business from one location to another. The equipment was fragile and of a delicate nature, and ranged in value from $600 to $4,000 per unit.
Shipment No. 9: Television recording cameras, monitors, audio equipment, and other equipment, transported from Columbia Broadcasting Company, New York City, to the same company at Los Angeles, California, for its use at one of its stations. The equipment was of a fragile and delicate nature and was valued at $120,000.
Shipment No. 10: Calculating machines and parts, transported from International Business Machines Corporation, Chicago, Illinois, to Lehigh Warehouse & Transport Co., Elizabeth, New Jersey, incidental to a sale of the articles by the consignor to the consignee.
Shipment No. 11: Shuffleboards, transported for the same consignor and under the same conditions and circumstances as shipment No. 2.
Shipment No. 12: New furniture, transported from Tropical Sun Company, Pasadena, California, to Myrick's Furniture Company, Orlando, Florida, to which it had been shipped on consignment and as "display merchandise". The transportation was not connected with or incidental to a change in the location of the place of business of the consignor.
Shipment No. 13: Cash registers, transported from Fort Pitt Typewriter Co., Pittsburgh, Pennsylvania to G. Sampedro, Miami, Florida, incidental to a sale of the registers by the consignor to the consignee.
Shipments Nos. 14, 15, 16, 17, 18, 19 and 20: Office equipment, including tabulating machines, tabulators, punchers, sorters, and wiring units, transported from offices of Remington Rand, Inc., to other offices of the same company, not in connection with a removal of its place of business or any portion thereof from one location to another, but incidental to a sale or lease of the equipment. The shipper employed a household goods carrier to perform the service because by doing so the machines could move uncrated and be transported directly from the point of origin to the places desired, and because they contained intricate and delicate wiring and were of high value (one shipment having a value of $49,600).
Shipment No. 21: Office furniture, including cabinets, desks and chairs, from Linde Air Ceramics Plant, Tonawanda, New York, to United States Atomic Energy Commission, St. Louis, Missouri. The transportation was incidental to a movement of an office of the Atomic Energy Commission from one location to another. After the trial the plaintiff conceded that the evidence was insufficient to show a violation by the defendant with respect to this shipment.
Shipment No. 22: Laboratory equipment, including tower assembly for a microwave portable test station, transported for Bell Telephone Laboratory, from its laboratory in New York City to one of its engineers at a field location in Nebraska. The equipment was the property of Bell Telephone, was of a delicate nature, and some parts of the equipment were susceptible to damage if handled carelessly as in ordinary freight service.
Shipment No. 23: A "portable carrier set", consisting of four cabinets and one carton with spare tubes and pads, used in the transmission of telegraph messages; transported for the Western Union Telegraph Co., from New York City to Galveston, Texas, for the company's use at *276 Galveston. Western Union was not moving its place of business. It used a household goods carrier to perform the transportation because the equipment was of delicate nature and not susceptible of shipment in ordinary freight service.
All the shipments moved on a released value of not to exceed 30 cents per pound. The limitation of value was made by the shippers for the purpose of obtaining a lower transportation rate. The shippers procured insurance to cover the risks not assumed by the carrier.

IV
Unless enjoined and restrained by this Court from doing so, the defendant intends to and will continue to engage in transportation and operations of the type listed in finding III hereof, without first obtaining from the Interstate Commerce Commission any authority other than the said certificate dated July 16, 1945.

Conclusions of Law

I
This Court has jurisdiction over both the defendant and the subject matter of this action, by virtue of the provisions of Part II of the Interstate Commerce Act, particularly Section 222(b) thereof 49 U.S.C.A. § 322(b).

II
Contrary to the contentions of the defendant, this action does not constitute an effort by the plaintiff to revoke, in whole or in part, the certificate heretofore issued by it to the defendant. The plaintiff's suit does not seek to have the Court make any change in the language of the defendant's said certificate. The action merely involves the question whether the defendant was and is authorized under the certificate to engage in transportation and operations such as those hereinabove described.

III
The defendant was without authority, under its certificate of public convenience and necessity authorizing it to transport "household goods", to transport the above described shipments, numbered 1, 2, 3, 4, 10, 11, 12 and 13. The shipments above referred to do not fall within any of the three classes or types of property described in the definition of household goods as set out under Finding of Fact II herein because of the particular circumstances under which said articles moved. Contrary to the defendant's contention, its said authority did not include the right to transport such articles merely because the articles were shipped uncrated.

IV
In so transporting the said shipments of property without authority, the defendant operated in violation of Section 206(a) of the Interstate Commerce Act, 49 U.S.C.A. § 306(a). The plaintiff is, therefore, entitled to a judgment enjoining and restraining the defendant from continuing to engage in such transportation and operations under such circumstances without first obtaining the requisite authority.

V
The remainder of the above-described shipments fall within either or both the second and the third part of the definition of household goods and, therefore, were within the scope of the defendant's operating authority. The shipments included microfilming equipment; television equipment, recording cameras, monitors, audio equipment, transmitting racks, and other equipment; office equipment, including tabulating machines, tabulators, punchers, sorters, wiring units and reproducers; office furniture, including cabinets, desks and chairs; laboratory equipment, including tower assembly for a microwave portable test station; "portable carrier set" consisting of cabinets with spare tubes and parts (which said carrier set is used in the transmission of telegraph messages). The articles included in these shipments were either the furniture, fixtures, equipment and the property of stores, offices, museums, institutions or other establishments and were a part of the stock, equipment and supply of such stores, offices, museums, institutions or other establishments or were articles of a delicate nature and of a considerable value which because of their unusual nature or value, required the *277 specialized handling and equipment usually employed in moving household goods, or both, and accordingly, the Court concludes that said articles were and are "household goods" within the meaning of that term as used in the defendant's Certificate and as defined by the Commission in 17 M.C.C. 467.

Order Modifying Judgment
Now for good cause shown, it is hereby ordered that, based upon the findings of fact and conclusions of law as heretofore entered by the Court under date of December 31, 1952, the original judgment entered thereon as of said date is hereby modified by inserting, in lieu of the last paragraph therein, a new paragraph, so that said judgment as so modified is as follows:

Judgment
This cause having come on for trial, and the Court, after considering the pleadings, the evidence, and the briefs and arguments of the parties hereto, having made and filed its findings of fact and conclusions of law:
It is hereby ordered, adjudged and decreed that the defendant, United Van Lines, Inc., a corporation, its officers, agents, employees and representatives, and all persons, firms, companies and corporations and their respective officers, agents, servants, employees and representatives, in active concert or participation with it, be perpetually enjoined and restrained from in any manner, or by any device, directly or indirectly, transporting in interstate commerce by motor vehicle on public highways for compensation, and engaging as a common carrier in the transportation of new furniture, shuffleboards, coin-operated roll-down machines, cafeteria and kitchen equipment, calculating machines and cash registers, or any other similar article or articles, when incidental to a sale or consignment from the consignor to the consignee.
Nothing herein contained shall be construed as prohibiting the transportation of said articles when moving as a part of the stock of a store, office, institution, hospital, or other establishment being moved from one location to another; nor the transportation of such articles if because of their unusual nature or value they require specialized handling and equipment usually employed in moving household goods; nor at such time, if at all, as there is in force with respect to said United Van Lines, Inc., a certificate of public convenience and necessity or other appropriate authority issued by the Interstate Commerce Commission authorizing such transportation.