**NORTH AMERICAN VAN LINES,**
**Inc., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12856.**

United States Court of Appeals
Sixth Circuit.

April 10, 1957.

Leonard A. Weakley, Cincinnati, Ohio, Albert F. Beasley, Washington, D. C., Paul Clarke, Fort Wayne, Ind., on brief, for appellant.

Thomas Stueve, Hugh K. Martin, U. S. Atty., Cincinnati, Ohio, Nicholas P. Mauro, Interstate Commerce Commission, Nashville, Tenn., on brief, for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The appellant, North American Van Lines, Inc., was convicted by verdict of a jury on 24 counts of an information charging violation of section 306(a),

Title 49, U.S.C.A.,[1] and was fined by the United States District Judge a total of $2,400 for knowingly and wilfully engaging in interstate commerce without the required certificate of public convenience and necessity issued by the Interstate Commerce Commission. The Code section prescribing the punishment [numbered 322] is set forth in the margin.[2]

The alleged offenses were committed during a period from June of 1953 to December of the same year. The counts specified in the information may be classified into three typical groups: (1) the transportation of "new metal bank equipment parts" by motor vehicle on public highways from Hamilton, Ohio, to points in other states; (2) the interstate transportation of "new metal hospital equipment parts" likewise by motor vehicle on public highways from Hamilton, Ohio; and (3) the interstate transportation of "new metal desks and bank equipment parts", in the same manner, from Hamilton, Ohio.

The appellant was operating under a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing it to transport "Household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, over irregular routes, Between points and places in the United States."

The definition by the Interstate Commerce Commission of "household goods" is found in Title 49, Code of Federal Regulations (1949 Ed.), Part 176, section 176.1: "The term 'household goods' means personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such dwelling: furniture, fixtures, equipment and the property of stores, offices, museums, institutions, hospitals, or other establishments when a part of the stock, equipment, or supply of such stores, offices, museums, institutions, hospitals, or other establishments; and articles, including objects of art, displays, and exhibits, which because of their unusual nature or value require specialized handling and equipment usually employed in moving household goods."

The foregoing definition of "household goods" divides into three parts: the first relating to property to be used in a dwelling; the second relating to office, museum, institutional or hospital properties and equipment; and the third part relating to articles requiring specialized handling and the use of equipment usually employed in moving household goods.

Appellant conceded that it had transported in interstate commerce the 24 shipments in question, but insisted that each of the shipments embraced "household goods" as defined by the Interstate Commerce Commission; and, in the alternative, appellant urged that if it should be held that the shipments did not consist of "household goods", appellant was under the bona fide belief that the shipments had so qualified under the definition and therefore was not guilty of "knowingly and wilfully violating" the statute upon which the information against it was based.

Each shipment was the transportation in interstate commerce of the products

1. "Except as otherwise provided in this section and in section 310a of this title, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * * *".

2. "Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not more than $100 for the first offense and not more than $500 for any subsequent offense. * * *"

of Herring-Hall-Marvin Safe Company from its plant in Hamilton, Ohio, where it manufactured safes, bank-vault equipment, and the like, as well as hospital and institutional furniture and fixtures, classified by the company as custom-built metal-case work. The safe company had contracted in each instance with a bank, hospital, or other institution to install at the destination point specially designed or assembled equipment in the building of the bank, hospital, or other institution to which the shipment was made. In all shipments, the safe company was both consignor and consignee. The President of Herring-Hall-Marvin testified that the company manufactures and assembles its products to fit specified dimensions, using to that end various standard types of cabinets, cases and desks.

As to the method of handling the shipments, appellant's employees entered the plant of the company and, after final adjustments and inspections had been made, took the goods, uncrated, to the van into which they were loaded, wrapped in pads, and secured with straps. After transporting the goods to the destination point, appellant's employees unloaded the shipments and took pieces indicated by markings to the number and floor where they were to be installed. The goods were there received by the shipper's employees and subsequently installed.

It would seem unnecessary to elaborate the testimony, except to say that there was nothing secretive in the actions of the appellant. In "Transport Topics" [a national newspaper circulated among motor freight carriers and among officials of the Interstate Commerce Commission] of January 18, 1954, appellant publicized the fact that it had obtained orders from the safe company for the transportation of a large number of van loads of the company's products. The products publicized were similar to those previously shipped, on which the informations here were based. Shortly after publication of that copy of "Topics," a district supervisor of the Bureau of Motor Carriers of the Interstate Commerce Commission notified appellant that the goods were, in his opinion, not "household goods", with the resultant that appellant had no authority to haul them.

At the trial, the testimony of the General Manager of a movers' trade organization, to the effect that in his opinion the shipments involved fell within the ambit of the second or third parts, or both parts, of the definition of "household goods", was offered by appellant but rejected by the court. In contrast, the testimony of the District Supervisor of the Commission was received in evidence.

Upon careful consideration of the entire record in the case, we fail to find any conflict in the evidence as to material controlling facts. In our view, the interpretation of the regulations in issue was a question of law for the court; and, therefore, there was reversible error in submitting the case to the jury.

It is true, as argued by appellee, that the construction placed by an administrative agency upon its regulations is entitled to great weight; but, it must be remembered, also, that it has long been recognized that in the construction of a penal statute, all reasonable doubts concerning its meaning must operate in favor of the accused. Harrison v. Vose, 9 How. 372, 50 U.S. 372, 378, 13 L.Ed. 179. Statutes creating crimes are to be strictly construed in favor of the accused, and may not be held to extend to cases not covered by the words used. United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 81 L.Ed. 127, citing United States v. Wiltberger, 5 Wheat. 76, 18 U.S. 76, 95, 5 L.Ed. 37 [opinion of Chief Justice Marshall]; Fasulo v. United States, 272 U.S. 620, 628, 47 S.Ct. 200, 71 L.Ed. 443. See also United States v. Halseth, 342 U.S. 277, 72 S.Ct. 275, 96 L.Ed. 308. The opinion in Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, cited by appellee, holds that a regulation of the Interstate Commerce Commission there involved (quite different from the regula-

tion here) was not void for vagueness; but the opinion expressly recognized the proposition that a "criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation." Citing Lanzetta v. New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888.

■■ There are many decisions of the Supreme Court of the United States wherein statutes condemning certain acts as criminal have been held unconstitutional for vagueness and uncertainty. Winters v. New York, 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840; Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; Champlin Refining Co. v. Corp. Commissioner, 286 U.S. 210, 243, 52 S.Ct. 559, 76 L.Ed. 1062; Smith v. Cahoon, 283 U.S. 553, 564, 51 S.Ct. 582, 75 L.Ed. 1264; Cline v. Frink Dairy Co., 274 U.S. 445, 456, 47 S.Ct. 681, 71 L.Ed. 1146; Connally v. General Construction Company, 269 U.S. 385, 391–393, 46 S. Ct. 126, 70 L.Ed. 322; United States v. L. Cohen Grocery Co., 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516; International Harvester Co. v. Kentucky, 234 U.S. 216, 221, 34 S.Ct. 853, 58 L.Ed. 1284. Impossible standards of specificity are not required, but the language of the statute must convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. Jordan v. DeGeorge, 341 U.S. 223, 231, 71 S.Ct. 703, 95 L.Ed. 886. "The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement." Winters v. New York, supra.

■ In Interstate Commerce Commission v. United Van Lines, D.C.E.D.Mo., 110 F.Supp. 273, it appears that an *injunction* was granted as to certain operations of a motor carrier and denied as to others within the inhibition of section 306(a) of Title 49, U.S.C.A., with which we are here concerned. It is noteworthy that, there, the Interstate Commerce Commission pursued the course of obtaining a civil remedy by injunction, while, here, a criminal prosecution was instituted against the appellant motor carrier. The quantum of proof demanded in criminal prosecutions is a showing of the guilt of the accused beyond a reasonable doubt, while in respect of a violation of a federal statute sought to be enjoined the burden of proof to be carried does not exact such high standard.

■ In the instant case, we do not imply that the Interstate Commerce Commission's definition is void for uncertainty, though we consider it ambiguous; but we base our reversal upon the proposition that, construing the penal statute as we must so that all reasonable doubts of its meaning are resolved in favor of the accused, we think that on the facts of the case the appellant was not lawfully convicted.

In Federal Communications Commission v. American Broadcasting Co., Inc., 347 U.S. 284, 296, 74 S.Ct. 593, 600, 98 L.Ed. 699, the Supreme Court stated that section 1304 of Title 18, United States Code, being a penal statute, must be construed strictly. This was held to be true, even though the case presented an appeal from an *injunction* by the district court forbidding enforcement of certain provisions of regulations of the Federal Communications Commission relating to the broadcasting of so-called "give-away" programs. The Chief Justice said: "There cannot be one construction for the Federal Communications Commission and another for the Department of Justice." He declared further that the regulations of the Commission had overstepped the boundaries of interpretation and thereby exceeded the rule-making power of the Commission.

In United States v. Cardiff, 344 U.S. 174, 176, 73 S.Ct. 189, 190, 97 L.Ed. 200, Mr. Justice Douglas wrote: "The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which

698

are vague and fluid, cf. United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, may be as much of a trap for the innocent as the ancient laws of Caligula."

The second and third sections of the Interstate Commerce Commission's definition of "household goods", when strictly construed with all reasonable doubts as to their meaning resolved in favor of the accused, would, in our judgment, afford appellant the right to transport the goods in controversy here in interstate commerce, without subjecting appellant to a criminal penalty.

We pretermit discussion of whether the civil remedy of injunction could be appropriately sought. The point is not now before us for decision.

The district court should not have left to the jury, as was done, the interpretation of the Commission's regulations. Interpretation of the regulations was an issue for the court and not for the jury.

Accordingly, the judgment of the United States District Court is reversed, with direction that the case be dismissed.