*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

WALTER RALPH MABRY (06-2324); ANTHONY
MICHAEL (06-2327),

　　　　　　　　　　*Defendants-Appellants.*

Nos. 06-2324/2327

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-80977—Bernard A. Friedman, Chief District Judge.

Argued: October 24, 2007

Decided and Filed: March 3, 2008

Before: KEITH and ROGERS, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** James K. Robinson, CADWALADER, WICKERSHAM & TAFT, Washington, D.C., Christopher P. Yates, YATES, LaGRAND & DENENFELD, Grand Rapids, Michigan, for Appellants. Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** James K. Robinson, CADWALADER, WICKERSHAM & TAFT, Washington, D.C., Christopher P. Yates, YATES, LaGRAND & DENENFELD, Grand Rapids, Michigan, for Appellants. Walter I. Kozar, David E. Morris, ASSISTANT UNITED STATES ATTORNEYS, Detroit, Michigan, for Appellee.

　　　ALDRICH, D. J., delivered the opinion of the court, in which ROGERS, J., joined. KEITH, J. (pp. 8-10), delivered a separate opinion concurring in part and dissenting in part.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**OPINION**

---

ANN ALDRICH, District Judge. Defendants-Appellants Walter Ralph Mabry and Anthony Michael were convicted and sentenced for conspiring to solicit and obtain prohibited payments from union contractors, and for soliciting and obtaining such payments, in violation of the Taft-Hartley Act, 29 U.S.C. § 186. On appeal, Mabry and Michael argue that (1) the district court erred in ruling that the term "settlement" under 29 U.S.C. § 186(c)(2) is limited to settlements in the context of formal litigation or arbitration; (2) they are entitled to a judgment of acquittal because there was insufficient evidence presented at trial to support a finding that the exception to liability under 29 U.S.C. § 186(c)(3) should not apply; and (3) the district court engaged in unsupported judicial fact finding to arrive at Mabry's sentence. For the reasons discussed below, we affirm the judgment of the district court on all counts, but recognize the possibility of a broader interpretation of "settlement" than that of the district court.

I.     **Background**

A.     *Factual Background*

At all times relevant, defendant-appellant Walter Ralph Mabry was the Executive Secretary-Treasurer of the Michigan Regional Council of Carpenters ("MRCC"), and defendant-appellant Anthony Michael was the President and Executive Director of MRCC, reporting directly to Mabry.

Around 1997 or 1998, Mabry decided to build a new house. Several contractors worked on the house, charging significantly less than the prevailing market rate. Of primary concern here is the carpentry work done by the Nelson Mill Company ("Nelson Mill"), a union contractor.[1] In the Spring of 1998, Nelson Mill agreed to complete the interior trim work on Mabry's new house at cost. Nelson Mill began work on the house in August 1998 and presented Mabry with an invoice for $46,117.45 when completed. This amount did not include any indirect overhead or profit. Mabry and Michael complained to Nelson Mill about the amount of the bill and asked for a price reduction. Ultimately, Nelson Mill voided the first invoice and prepared a second one for $26,000, which Mabry paid in December 1999. As a result of accepting this lower amount, Nelson Mill suffered a substantial loss on the Mabry job.

B.     *Procedural Background*

On November 29, 2004, a grand jury returned a two-count indictment against Mabry and Michael for (1) conspiracy to solicit and obtain prohibited payments from union contractors in the form of discounts on building materials, labor, and related costs in connection with construction of Mabry's house, in violation of 18 U.S.C. § 371; and (2) soliciting and obtaining a discount of approximately $20,000 from a union contractor in violation of 29 U.S.C. §§ 186(b)(1), (d)(2) and 18 U.S.C. § 2.

On September 19, 2005, Mabry and Michael moved for severance of the two counts, arguing that the exception under 29 U.S.C. § 186(c)(2) applied to the second count. The district court denied the motion for severance, but declared that § 186(c)(2) applied to the informal resolution of the Nelson Mill payment dispute. The Government subsequently filed a motion for reconsideration,

---

[1] Danna Carpentry Contractors, Harris Homes Carpentry, K&R Construction, Brown's Flooring, and Crudo Brothers also performed work on the house, as referenced in Part III, *infra*.

arguing that "settlement" under § 186(c)(2) must relate to ongoing litigation or arbitration. On November 17, 2005, the district court granted the Government's motion, holding that

> [§]186(c)(2) applies only if the parties have reached a resolution of a dispute or claim through the adjudicative process, meaning by a judgment of a court or an arbitrator's award. Section 186(c)(2) offers no protective refuge for any parties that resolve a dispute through independent, informal negotiations held solely between the parties themselves.

*United States v. Mabry*, No. 04-CR-80977, 2005 U.S. Dist. LEXIS 39609, at *20 (E.D. Mich. Nov. 17, 2005).

Following conviction by a jury on both counts, Mabry and Michael moved for judgment of acquittal pursuant to Rule 29 on the basis that the exception under § 186(c)(3) should have applied because the Government failed to present sufficient evidence at trial showing that the transactions were not at the prevailing market price. The district court denied their motions on June 1, 2006.

A sentencing hearing was held on September 25, 2006. Mabry was sentenced to concurrent 24-month terms of imprisonment, followed by a three-year term of supervised release, with the condition that he hold no union position. He was also fined $50,000 plus a $200 special assessment. Michael was sentenced to two concurrent one-year-and-one-day terms of imprisonment, followed by a two-year term of supervised release during which he was prohibited from holding a union position. He was fined $3,000, plus a $200 special assessment.

## II.      Meaning of "settlement" under 29 U.S.C. § 186(c)(2)

We review issues of statutory interpretation de novo. *United States v. Wagner*, 382 F.3d 598, 606-07 (6th Cir. 2004).

Payments between employers and union officials are outlawed by the Taft-Hartley Act, 29 U.S.C. § 186 (2006). However, certain payments between employers and union officials are exempted, including the:

> payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, *settlement*, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress;

29 U.S.C. § 186(c)(2) (2006) (emphasis added). At issue here is whether the term "settlement" under § 186(c)(2) applies to the informal resolution of the Nelson Mill payment dispute.

Mabry asserts that because he paid $26,000 to Nelson Mill in "settlement" of a dispute over the costs of labor and materials, he is exempted from criminal liability pursuant to § 186(c)(2). He asserts that the "or" before "in compromise" is disjunctive, meaning that the word "settlement" applies to settlements made *outside* the context of formal litigation or arbitration. The Government offers a narrower reading of "settlement," arguing that the term should be limited to settlement of an actual controversy that was filed and pending in court, or presented to an arbitrator or impartial adjudicator.[2]

---

[2] On such facts, if the parties ultimately agreed to pay at the prevailing market price, and if the transaction was conducted in the regular course of business, then the exception under 29 U.S.C. § 186(c)(3) would apply, as discussed *infra*.

Although we decline to construe the term as narrowly as the Government urges, based upon the purpose, statutory scheme, and language of 29 U.S.C. § 186, "settlement" cannot be construed so broadly as to include the informal resolution of the Nelson Mill payment dispute.

One of the purposes of enacting § 186 was to combat the corruption of the collective bargaining process that occurs when a union employer gives something of value to a union representative. *Arroyo v. United States*, 359 U.S. 419, 425-26 (1959). This purpose would be undermined if employers and union officials could simply enter into informal agreements, later dispute these agreements, and then make payments in "settlement" of the dispute. To allow such "settlements" to qualify under § 186(c)(2) would nullify "the proscriptive effect of the statute . . . since every payment by an employer to a union could be characterized as a settlement of a claim or demand made by the union." *International Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 326 F.2d 916, 919-20 (2d Cir. 1964).

Consistent with its purpose of protecting the integrity of the collective bargaining process, the statutory scheme of § 186 narrowly defines exceptions to its general prohibition of payments. Section 186(c) provides nine exceptions which serve as affirmative defenses to liability under § 186(a)-(b). Although the exceptions describe a fairly wide range of legal payments between union employers and union officials, there is a common thread. With the potential exception of the present ambiguity under (c)(2), the exceptions to liability under § 186(c) refer to situations where the way in which a payment is made evidences its legitimacy under the Taft-Hartley Act. In other words, the nature of the payments embodied in these exceptions are such that they do not run the risk of corrupting the integrity of the collective bargaining process.

For example, an employer may deduct wages from employees for the payment of union membership dues as long as the employee first authorizes such a deduction in writing. 29 U.S.C. § 186(c)(4). The employee's written assignment of wages provides external evidence that the payment from the employer to the union was made for a legitimate purpose. Similarly, when a union official purchases something from an employer at the prevailing market price in the regular course of business, the collective bargaining process is not harmed. 29 U.S.C. § 186(c)(3). Documents of sale that would normally accompany such a transaction would provide objective evidence that the payment was made for a legitimate purpose. Thus, based upon the underlying purpose of § 186 and the statutory scheme of the exceptions, we can infer that Congress similarly intended that there should be some external evidence of the legitimacy of the payment for a payment to qualify under § 186(c)(2).

It is from this understanding of the purpose and statutory scheme that we now turn to the language of § 186(c)(2) itself. Section 186(c)(2) legalizes three types of payments, all of which are made to resolve some type of dispute: (1) payments in satisfaction of the outcome of litigation, (2) payments in satisfaction of the outcome of arbitration, and (3) payments to otherwise resolve a dispute, in the absence of fraud or duress. The first two categories are specific, referring to structured methods of dispute resolution. In these categories, the presence of a court order or decision of an arbitrator provides evidence of the legitimacy of the payment. The third category, however, is much more general, serving as a statutory catch-all to encompass payments resulting from less structured means of dispute resolution. As a result, determining whether payments under the third category are legitimate, e.g., in the absence of fraud or duress, presents a much more difficult issue. Fortunately, the pattern of statutory construction present in § 186(c)(2) sheds some light. Where a statute lists specific things followed by a more general one, the canon of *ejusdem generis* provides guidance.

Under *ejusdem generis*, we attribute "the same characteristic of discreteness shared by all the preceding items" to the term in question. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (interpreting "failure to act" as a failure to take an agency action because "failure to act"

was constrained by the enumerated agency actions preceding that term in the statute); *Canton Police Benevolent Ass'n of Canton v. United States*, 844 F.2d 1231, 1236 (6th Cir. 1988) (under the "time-honored rule of *ejusdem generis*, . . . a general word in a statute takes its character from the specific words with which it appears").

Applying the canon to § 186(c)(2), the third category must be constrained by the specificity of the preceding ones, meaning that the third category must be interpreted to require some level of structure or formality in resolving a dispute to evidence the legitimacy of the ensuing payment. Although we express no opinion as to what degree of structure must be present to trigger the protection of § 186(c)(2), we are certain that it is lacking here. Accordingly, the informal resolution of the Nelson Mill payment dispute cannot qualify as a "settlement" under § 186(c)(2).

### III.     Sufficiency of evidence under 29 U.S.C. § 186(c)(3)

We review the district court's denial of the motion for acquittal de novo and "must affirm [the district court's] decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan*, 48 F.3d 954, 962 (6th Cir. 1995).

The exception under § 186(c)(3) provides that payments between union officials and employers are not illegal if they are made "with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business." 29 U.S.C. § 186(c)(3) (2006). When "a criminal statute contains exceptions which take out of the scope of the statute conduct which otherwise would fall within its terms, the prosecution is not required initially to negative the applicability of the exceptions to the case at hand." *United States v. Paulton*, 540 F.2d 886, 892 (8th Cir. 1976). Because § 186 is such a statute, Mabry would have to "come forward with evidence at least sufficient to create a real issue as to whether or not he is entitled to the benefit of the exception which he invokes." *Id*.

At trial, Mabry presented expert testimony establishing a wide range of prevailing market prices for the work performed by Nelson Mill. His expert had solicited bids from a variety of contractors to establish this range. However, because the contractors who submitted bids knew that they would not have to perform at the prices submitted, the bids were non-binding. Such "bids" are more akin to quotations, which "are generally not a reliable indicator of the prevailing market price. Quotations only propose transactions and do not represent completed arms-length sales." *First Independence Group v. SEC*, 37 F.3d 30, 32 (2d Cir. 1994). Thus we are not persuaded by Mabry's method of establishing the prevailing market price.

At a minimum, the prevailing market price should cover the contractor's costs. *See id*. At trial, the Government presented testimony that Mabry paid less than cost on the transactions with Harris Homes Carpentry, K&R Construction, Brown's Flooring, and Nelson Mill. The Government also presented testimony that the payment offered to Danna Carpentry was lower than the costs Danna anticipated paying its employees. Based on this evidence, a rational trier of fact could conclude beyond a reasonable doubt that because Mabry paid less than cost on the enumerated transactions, he did not make payments at the prevailing market price. Further, his reliance on the non-binding bids obtained by his expert is not sufficient evidence to create a real issue as to whether or not he is entitled to the benefit of § 186(c)(3). Therefore, the district court's denial of the motion for acquittal is affirmed.[3]

---

[3] In the alternative, the Government argues that for a transaction to fall under the § 186(c)(3) exception, it must not only be at the prevailing market price, but also be done "in the regular course of business." Mabry objects to this interpretation, instead reading the provision to essentially mean that the prevailing market price should be established based on transactions occurring "in the regular course of business." Because the Government presented sufficient

### IV.  Sentencing

Mabry and Michael challenge their sentences on the basis that (1) the district court's calculation of improper benefit was not supported by the evidence, and (2) the sentencing violated *United States v. Booker*, 543 U.S. 220 (2005) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

### A.  *Improper Benefit*

We are obliged to set aside the district court's factual findings regarding improper benefit based upon § 2F1.1(b) of the United States Sentencing Guidelines ("U.S.S.G.") only if those findings are clearly erroneous. *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

The sentences received by both Mabry and Michael were dependent upon the amount of improper benefit that Mabry received in the construction of his house. Mabry argues that because the jury did not determine the amount of value Mabry received from the construction of his house, the district court's finding of improper benefit was not supported by the evidence.

At the sentencing hearing, the district court explained that the jury's guilty verdict demonstrated that the jury had found that Mabry had received a thing of value from the construction of his house. Relying on the trial testimony, the district court then computed the amount of improper benefit by subtracting what the various subcontractors were actually paid from the amount that they should have been paid. Taken altogether, the district court found the total improper benefit to be $127,800.00, which justified increasing the offense level by 7 under U.S.S.G. § 2F1.1(b)(1)(H).[4] Having reviewed the sentencing transcript, we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, we affirm the district court's finding of improper benefit.

### B.  **Booker** *and* **Apprendi** *Issues*

We review *Booker* and *Apprendi* sentencing issues de novo. *United States v. Johnson*, 440 F.3d 832, 847 (6th Cir. 2006); *United States v. Till*, 434 F.3d 880, 885-886 (6th Cir. 2006).

Section 186(d)(2) provides a one-year statutory maximum sentence if the violations of § 186(a)-(c) do not exceed $1,000. However, if a defendant stipulates to the relevant facts, the government can seek judicial sentence enhancements. *Blakely v. Washington*, 542 U.S. 296, 310 (2004).

Mabry argues that the district court could impose a sentence greater than the statutory maximum only if he had admitted, or the jury had found beyond a reasonable doubt, that he received a thing of value in excess of $1,000. However, at the jury instructions conference, Mabry's counsel stipulated that if the jury returned a verdict of guilty, it would be presumed that Mabry had received a thing of value of at least one thousand dollars. Because Mabry stipulated that a guilty verdict

---

evidence that the transactions were not conducted at the prevailing market price, we need not reach this issue.

[4] The 1998 edition of the U.S.S.G. Manual was used.

would mean that the violations of § 186(a)-(c) exceeded $1,000, we affirm the district court's sentences of both Mabry and Michael.[5]

### V.    Conclusion

For the reasons discussed above, the conviction and sentence of the district court are affirmed.

---

[5] We note that there is a difference between "not exceeding $1,000" and "at least $1,000." This linguistic discrepancy arises from a misstatement by the Government at the jury instructions conference. As the transcript clearly shows, the intent of the stipulation was that if the jury returned a guilty verdict, it would indicate that the defendants were guilty of a felony, not a misdemeanor. (J.A. 1600-1606.) The mere fact that the Government misquoted the statute is not of significance here, and Mabry has not argued the point.

---

### CONCURRING IN PART, DISSENTING IN PART

---

DAMON J. KEITH, Circuit Judge, concurring in part and dissenting in part. I concur with the majority's decision that there was sufficient evidence to support a finding that the exception under 29 U.S.C. § 186(c)(3) does not exempt Appellants from criminal liability. I also agree that the district court did not engage in impermissible judicial fact finding to arrive at Mabry's sentence. I disagree, however, with the majority's determination that in order for the "settlement exception," 29 U.S.C. § 186(c)(2), to apply, the parties must have initiated a structured dispute resolution process.

The crux of the matter is whether 29 U.S.C. § 186(c)(2) provides an exception to the general prohibition against payments between employers and union officials in the context of settlements outside of a formal dispute resolution process. The text of the (c)(2) exception exempts:

> [T]he payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress . . . .

This settlement exception clearly includes payments between employers and union officials in response to court- or arbitrator-ordered awards, but it is the ambit of the last phrase "in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress" to which I now turn.

The first step in interpreting any statute is to determine whether "the language at issue has a plain and unambiguous meaning." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil*, 519 U.S. 337, 340 (1997)); *see also Fullenkamp v. Veneman*, 383 F.3d 478 (6th Cir. 2004). If the "statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" then "[o]ur inquiry must cease." *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). Here, the plain meaning of the words "in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute" does not require that the settlement of such disputes occur in the context of formal litigation or arbitration. In particular, the words "compromise," "adjustment," "settlement," and "dispute" do not necessarily relate to litigation or arbitration. These words refer to the settlement or conclusion of a disagreement, with no express reference to formal proceedings. Moreover, the definitions of "claim" in Webster's Third New International Dictionary (1986) are "an authoritative or challenging request," "a demand of a right or supposed right," and "a calling on another for something due or supposed to be due."[1] All three definitions place Defendant Mabry's dispute as to the amount owed squarely within the plain meaning of "claim." Given the broad language used to describe the types of settlements exempted within § 186(c)(2), a plain reading of the statute allows an exemption to § 186 for the settlement of informal disputes made in the absence of fraud or duress.

The majority, however, relies upon *ejusdem generis*, an interpretive aid in statutory construction, to find that part one of § 186(c)(2), allowing for an exception where payment is given

---

[1] The definition of "claim" in Black's Law Dictionary (8th ed. 2004), though including the concept of formal litigation, also encompasses informal disputes that do not necessarily involve litigation or arbitration. The definitions are: "1. The aggregate of operative facts giving rise to a right enforceable by a court . . . 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional . . . 3. A demand for money, property, or a legal remedy to which one asserts a right . . . ."

upon "satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman," modifies part two, which exempts payment "in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress." However, *ejusdem generis* "cannot be employed to render general words meaningless." *United States v. Alpers*, 338 U.S. 680, 682 (1950); *accord Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1097 n.3 (6th Cir. 1981). The principle of *ejusdem generis* is particularly inapplicable here where Congress, in setting forth the statutory language, went to great lengths to provide a broader scope for the settlement exception, using the words "compromise," "adjustment," "settlement," "dispute," and "claim"–none of which necessitate the initiation of a formal dispute resolution process.

In the majority's view, however, "some level of structure or formality in resolving a dispute to evidence the legitimacy of the ensuing payment" is required, and "[a]lthough [they] express no opinion as to what degree of structure must be present to trigger the protection of § 186(c)(2), [they] are certain that it is lacking here." Even though the majority's interpretation of § 186(c)(2) does not explicitly require litigation or arbitration to validate a settlement, it renders the import of its decision unclear and will likely lead to further confusion. The majority's imprecise reading of the statute, coupled with its explicit refusal to decide what actions are necessary to trigger the settlement exception, seem to suggest that even bona fide settlements of real disputes are subject to criminal sanction simply because the parties did not sue each other or initiate arbitration. I believe that a better construction of the statute would allow parties with bona fide disputes to settle their claims, without resorting to litigation or arbitration, so long as that settlement is "in the absence of fraud or duress." Such a reading would avoid the problems inherent in the majority's interpretation, which effectively reads out key language in § 186(c)(2).

Moreover, this interpretation would harmonize the plain language of § 186(c)(2), which includes informal settlements, with the overall purpose of § 186. As the majority correctly states, the legislative purpose of § 186 was to combat corruption within the collective bargaining process by imposing criminal sanctions on union officials who receive payments from employers. *See e.g.*, *Arroyo v. United States*, 359 U.S. 419, 424-25 (1959). The legislature's remedial purpose, however, should be harmonized with an exception whose plain meaning allows the receipt of things of value to settle informal disputes. Indeed, allowing parties to amicably settle their disputes would not, in effect, swallow the entire statute because the parameters of that exception are *written into § 186(c)(2) itself*–"in the absence of fraud or duress." That limiting language provides an end point for § 186(c)(2) and affords a precise fit between the contours of the corrupt activity prohibited by § 186 and the exception given to the settlement of bona fide disputes in § 186(c)(2).

Furthermore, despite Congress's explicit displeasure with corruption within the collective bargaining process, it is not at all clear that Congress meant to criminalize such a broad swathe of potentially legitimate activity. "[I]f Congress had intended to [criminalize such conduct], and to subject [offenders of the prohibition] to lengthy prison terms, it would have spoken more clearly to that effect." *Staples v. United States*, 511 U.S. 600, 620 (1994). In other words, if Congress had intended to require union officials to initiate formal proceedings for the settlement exception to apply, Congress would have said so. The absence of the words "formal litigation" or "arbitration" and the insertion of the words "claim" and "dispute" into the second section of § 186(c)(2) suggests that Congress did not actually intend to require union officials and employers to engage in formal adjudicative processes to avoid criminal liability. The requirement was only that the claim and its settlement be bona fide, i.e., "in the absence of fraud or duress." Thus, the plain language of the statute together with the discernable congressional intent of § 186 suggest that § 186(c)(2), the settlement exception, should be read to allow the settlement of bona fide disputes between an employer and a union official as long as both the dispute and settlement are in the absence of fraud or duress.

Moreover, to the extent that there exists any ambiguity in the meaning of § 186(c)(2), the rule of lenity should operate as a tie-breaker in favor of the defendant. The rule of lenity is a long-standing principle of statutory construction directing that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Jones v. United States*, 529 U.S. 848, 858 (2000) (quoting *United States v. C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952)); *see also Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003); *United States v. Wiltberger*, 18 U.S. 76, 95 (1820); 3 N. Singer, Sutherland Stat. Const. (6th ed. 2007) (stating that lenity is "an ancient rule of statutory construction that penal statutes should be strictly construed against the government . . . and in favor of the persons on whom such penalties are sought to be imposed.").

The purpose of lenity is, first, to allow a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *N. Am. Van Lines v. United States*, 243 F.2d 693, 697 (1957). *See also United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001). Second, lenity operates to assuage "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *Boucha*, 236 F.3d at 774 (quoting *United States v. Bass*, 404 U.S. 336, 348 (1971)). Thus, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).

Here, to the extent that the majority's interpretation also represents a plausible reading of § 186(c)(2), the language and intent of the settlement exception is not sufficiently clear to warrant such a narrow interpretation of the exception under § 186(c)(2). I am loath to inflict criminal punishment on those who engage in the amicable settlement of bona fide disputes where the plain language of § 186(c)(2) exempts from liability informal settlements of disputes between employers and union officials.

Thus, based on the plain language, discernible congressional intent, and rule of lenity, I believe that the appropriate interpretation of § 186(c)(2) is that informal settlements of informal disputes are excepted from the general prohibition of § 186 so long as such settlements are made in the absence of fraud or duress. Accordingly, I respectfully dissent.