**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0801n.06

No. 06-6477

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 17, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| MARTIN COX, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE:  NORRIS, CLAY, and SUTTON, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.**    Defendant Martin Cox appeals from his jury conviction for aiding and abetting in the possession of a stolen vehicle, 18 U.S.C. § 2313.  He contends that the government introduced constitutionally insufficient evidence for a jury to find guilt beyond a reasonable doubt. For the reasons set forth below, we affirm.

**I.**

On April 20, 2004, a grand jury returned a nine-count superseding indictment that charged six individuals, including Cox, with a variety of offenses: bank robbery, 18 U.S.C. § 2113; robbery affecting interstate commerce, 18 U.S.C. § 1951 ("Hobbs Act"); use of a firearm while committing a crime of violence, 18 U.S.C. § 924(c); possession of a firearm by a convicted felon, 18 U.S.C. § 922(g); and possession of a stolen motor vehicle that had crossed a state line, 18 U.S.C. § 2313.  Cox

was named in six of the counts and ultimately tried on three of them.[1] The jury returned guilty verdicts in each.

Cox's convictions stem from the robbery of a Kroger grocery store on December 10, 2003. At trial, co-defendant Robert Phillips testified that he and three of his colleagues traveled to Mississippi and waited while one of them, Alfonzo Johnson, stole a white Grand Prix from the lot of a Dollar General store. They then drove back to Memphis. Cox did not go with them or in any way participate in the car theft.

According to Phillips, the group stopped to get the clothing they needed for the planned Kroger robbery before traveling to Cox's apartment, where Cox provided guns to at least three of his co-defendants. Cox's brother-in-law, co-defendant Demond Robinson, indicated that Cox had targeted the Kroger store as a "nice spot" to rob. Phillips went on to describe the plan in these terms:

> We was [sic] told that the Kroger was out east by Martin Cox. So we decided that one would watch the door, Meco [Remeco Pennington] was going to go in behind Bushwick [Robinson], and Kaos [Cox] was going to go in and scout it once we get [sic] there.

The group then left for the Kroger store in three cars, with the Grand Prix in the middle to avoid detection. Cox drove his own truck as lead.

When they arrived, Cox went in first as planned to assess the target. Using his cell phone, he informed his colleagues that a police officer was in the store to the "right by the exit door." He also told the others to hurry because the bank branch inside would soon close. While Cox was

---

[1]In addition to the stolen vehicle count, he was charged with violating the Hobbs Act and possessing a firearm while committing a crime of violence.

scouting the scene, the others dropped off Phillips' car, a Cadillac, and piled into the stolen Grand Prix before returning to the Kroger store.

Cox left as his colleagues entered. Pennington wasted no time in shooting the police officer, who was critically wounded, while Robinson stole $4,000 in cash. The two, along with co-defendants Kenneth Taylor and Phillips, then left the store and fled in the Grand Prix. They abandoned that car shortly thereafter in favor of Phillips' Cadillac. While all this was happening, Cox telephoned to let them know that "police was [sic] everywhere."

The entire group eventually met at Robinson's house and split up the money. Cox collected the guns that he had provided with the exception of the one used to shoot the police officer, which he sold to Johnson for $100.

After his arrest, Cox agreed to an interview conducted by Memphis Sergeant Shirley Woods. Although he denied participating in the robbery, Cox conceded that he was in the Kroger store shortly before it occurred to make a bank deposit and to purchase ice cream. Sergeant Woods then asked, "Did [Pennington] discuss prior to the robbery how he was going to commit it?" Defendant replied, "[He] told me that he was thinking about robbing the Kroger on the same day that the robbery occurred. I know from previous times when they steal cars they want to try to rob something."

**II.**

**A.**

At the close of the trial, counsel for defendant moved for a judgment of acquittal based upon the sufficiency of the evidence with respect to all three counts. The district court summarily denied

the motion. We review that decision *de novo*. *United States v. Mabry*, 518 F.3d 442, 447-48 (6th

Cir. 2008). When evaluating a sufficiency of the evidence claim, this court takes the following

approach:

> The district court's denial must be affirmed "if the evidence, viewed in the light most
> favorable to the government, would allow a rational trier of fact to find the defendant
> guilty beyond a reasonable doubt." *Mabry* at 448 (quoting *United States v. Canan*,
> 48 F.3d 954, 962 (6th Cir. 1995)). "The appellate court must view all evidence and
> resolve all reasonable inferences in favor of the government." *United States v.
> Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307,
> 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Searan*, 259 F.3d 434,
> 441 (6th Cir. 2001)). In doing so, however, the court cannot independently weigh the
> evidence nor substitute its judgment for that of the jury. *Id.* (citations omitted). "This
> standard is a great obstacle to overcome, and presents the appellant in a criminal case
> with a very heavy burden." *Hughes*, 505 F.3d at 592 (citing *United States v. Winkle*,
> 477 F.3d 407, 413 (6th Cir. 2007) and *United States v. Jackson*, 473 F.3d 660, 669
> (6th Cir. 2007)).

*United States v. Acierno*, 579 F.3d 694, 698-99 (6th Cir. 2009).

**B.**

While it is true that "the Due Process Clause protects the accused against conviction except

upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he

is charged," *In re Winship*, 397 U.S. 358, 364 (1970), the jury "need not exclude every reasonable

hypothesis except that of guilt." *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994).

The statute at issue reads in relevant part as follows:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor
> vehicle, vessel, or aircraft, which has crossed a State or United States boundary after
> being stolen, knowing the same to have been stolen, shall be fined under this title or
> imprisoned not more than 10 years, or both.

- 4 -

18 U.S.C. § 2313(a). To obtain a conviction the government must prove that the vehicle was stolen; that defendant received, possessed, concealed, stored, bartered, sold or disposed of the vehicle; that it crossed a state line; and that defendant knew the vehicle had been stolen.

Cox does not contest that the evidence was sufficient for the jury to conclude that two of the elements – that the vehicle was stolen and crossed a state line – were proven. Rather, he focuses on the scant evidence that he knew the vehicle had been stolen or that he "possessed" it.

We begin by noting that the relevant count of the superseding indictment charged that defendant and his colleagues "aided and abetted, each by the other, did receive and possess a motor vehicle which had crossed a state boundary after being stolen, knowing the same to have been stolen." Thus, the government need not prove that Cox himself possessed the vehicle, only that he aided and abetted in its possession. With respect to his knowledge that the Grand Prix was stolen, the jury heard Sergeant Woods testify that Cox told her that "when they steal cars, they want to try to rob something." The jury could infer from that statement that Cox knew that the car had been stolen, just as he knew the Kroger store had been targeted for robbery. Likewise, there was ample if not overwhelming evidence that Cox aided and abetted in the possession of the vehicle. Phillips testified that he had been told by Cox's brother-in-law that the Kroger store would be a "nice spot" to rob. Just before the robbery, Cox told the group of the store's location, explained that he would act as scout, and led the convoy of three vehicles, which included the Grand Prix, to the scene. According to Phillips, the group strategically placed the stolen vehicle in the middle "so nobody could see the tags that was going out there." In our view, this testimony is sufficient to support a jury finding that Cox aided and abetted the possession of the vehicle, particularly in light of our charge

to "view all evidence and resolve all reasonable inferences in favor of the government." *Hughes*,

505 F.3d 592.

## III.

The judgment is **affirmed**.