*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0298p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            *v.*                                            No. 08-1349

THOMAS A. DAVIS,
                    *Defendant-Appellant.*

—————————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00191—Robert Holmes Bell, District Judge.

Argued: April 24, 2009

Decided and Filed: August 20, 2009

Before: COLE and CLAY, Circuit Judges; CLELAND, District Judge.[*]

—————————————

**COUNSEL**

**ARGUED:** Jeffrey J. O'Hara, LAW OFFICE, Grand Rapids, Michigan, for Appellant. Phillip J. Green, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jeffrey J. O'Hara, LAW OFFICE, Grand Rapids, Michigan, for Appellant. Phillip J. Green, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

CLELAND, District Judge. Defendant-Appellant Thomas A. Davis appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant challenges the district court's findings on the admissibility of the

———

[*]The Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation.

1

contents of an emergency 911 call made by a woman who would later be called as a witness, and other statements made by an unidentified woman who alerted a passing police officer. Defendant also argues that, based on the record, no rational jury could have found that he possessed the firearm, either actually or constructively. We disagree and will **AFFIRM**.

## I.  BACKGROUND

### A.     Factual Background

In the early days of July, 2007, Defendant decided to go joyriding in a rented car accompanied by his friend, Senecca McElwee, and a gun. Specifically, the evidence adduced at trial established that, on July 7, 2007, McElwee paid Thomas Latham fifty dollars to rent a car for him. Latham rented a blue 2007 Chevy Cobalt from Enterprise Rent-A-Car, and immediately turned it over to McElwee. McElwee and Defendant spent the next several days together, taking turns driving the car.

On July 10, 2007, seventeen-year-old Ronica McIntosh was walking with her teenage cousin and two small children when she saw a man she recognized as Defendant riding in a vehicle, and was able to see that he was holding a gun. McIntosh testified that she was alarmed for two reasons: because she saw the gun and because she thought Defendant had been involved in a murder which had occurred about a week earlier at the Brick House Bar in Grand Rapids, Michigan.[1] McIntosh felt responsible for the safety of the small children and picked up her pace. She immediately called 911, but her initial 911 call was dropped. When she called back and was reconnected, she recited the license plate number she saw as BEW 7533, and said that the car was a Ford Focus. The plate number was the same as that registered to the Cobalt that Latham had rented for McElwee, and Special Agent Michael Heffron would later testify that a Ford Focus looks similar to a Chevy Cobalt. Even though she had seen only one gun, McIntosh said

---

[1]McIntosh testified first outside the presence of the jury in order to provide a record on which the court could rule on the admissibility of the 911 tape. After the jury was brought back in, she testified substantially the same, except that, as ordered, she did not mention anything about the Brick House murders.

that she told the 911 dispatcher that Defendant had two because she thought this would make the police respond more quickly. She also told the dispatcher it had been five minutes since she saw him, but she testified that this was incorrect and it had only been between thirty seconds and a minute.

The following day, on July 11, 2007, Grand Rapids Police Officer Michael LaFave, having been waved down by a woman on the street saying that she had recently seen Defendant with a gun and in a car bearing license plate BEW 7533, relayed to his dispatcher all the information she gave him – Defendant's name, the car's description, the license plate number, and that Defendant was said to have a gun. This information was transmitted by LaFave over police radio, and anyone with a police scanner could have heard his statements.

Douglas testified that, on July 11, 2007, he along with Defendant, McElwee, and Christopher Jeffries were driving around in the Chevy Cobalt. At some point, Defendant left the car and entered a residence. When he returned, Defendant stated that "somebody called the boys on us," which Douglas understood to mean that someone had reported them to the police. The four men drove the car back to a house on Calvin street, where they had visited earlier in the day. The men smoked marijuana and, at some point, McElwee and Defendant went outside by themselves. When they returned, they announced that they had a plan to change the rental car for another. The men then met Latham, who had originally rented the Cobalt, and Latham exchanged the car at Enterprise for a Chrysler PT Cruiser.

The Grand Rapids Police Department, together with the Federal Bureau of Investigation ("FBI"), followed up on the tip that Officer LaFave received from the unidentified woman. The FBI ran the license plate BEW 7533 through the department's records and found that it was registered to Enterprise. Enterprise informed Special Agent Patrick Kelly that the license plate was registered to a Chevy Cobalt. When Latham returned to Enterprise to exchange the Cobalt for the PT Cruiser on July 11, 2007, Enterprise contacted FBI agents. Agents drove to the rental agency and placed the PT Cruiser under surveillance. The case agents and the Grand Rapids officers followed

the PT Cruiser a short distance back to Grand Rapids, where the officers conducted a traffic stop. Inside the car were four men, including Defendant, who was in the front passenger seat at the time of the stop. All four men were ordered to put their hands in the air, and all of them complied except Defendant. Instead, Defendant was observed making a "furtive movement" and bending over in an apparent attempt to put something under his seat. Eventually, however, Defendant complied with police commands.

Grand Rapids police officers searched the car and found a firearm under the passenger seat. Officer James Wojczynski testified that he immediately looked under the passenger seat because of Defendant's "obvious stuffing actions under the seat." The officers also found a small baggie of marijuana under the seat, positioned behind the pistol. The gun was not visible, but was about halfway under the seat, with its handle facing toward the front and its barrel facing toward the rear. There were only three or four inches between the bottom of the seat and the floorboard. Officer Wojczynski testified that it would have been "very unlikely" that Defendant could have thrown the baggie of marijuana past the gun under the seat.

Defendant was taken into custody where he was given his *Miranda* warnings, which he voluntarily waived. Defendant originally denied placing anything under his seat and then later stated that he put the marijuana under the seat. Defendant denied placing the gun under the seat and denied that the gun was his. The three other occupants of the car also denied knowledge of the gun.

**B. Procedural Background**

On August 9, 2007, Defendant was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 921(a). A jury trial began on November 13, 2007. Defendant objected to the admission of (1) a July 11, 2007 statement made by the unidentified woman to Officer Michael LaFave indicating that she had seen Defendant with a handgun and (2) similar statements made on July 10, 2007 by McIntosh during a 911 telephone call. The district court overruled the objections, finding that the first statement was not being offered to prove the truth of the matter asserted but rather to explain the police officers' subsequent actions, and

concluding that the 911 call fell within the hearsay exceptions of excited utterance and present sense impression. At the close of the Government's case, Defendant moved for a directed verdict, which was denied. The Government contends that Defendant did not renew his motion at the close of all the proofs.**2**

The jury returned its guilty verdict on November 15, 2007. On February 29, 2008, District Court Judge Robert Holmes Bell sentenced Defendant to forty-eight months in custody. Defendant timely appealed on March 12, 2008.

## II. ANALYSIS

### A.     Alleged Evidentiary Errors

### 1. Standard of Review

"An appellate court reviews all evidentiary rulings--including constitutional challenges to evidentiary rulings--under the abuse-of-discretion standard." *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)); *see also United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003) ("All evidentiary rulings, including hearsay, are reviewed for abuse of discretion."). "An abuse of discretion will be found upon a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Schreane*, 331 F.3d at 564 (quoting *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999) (internal quotation marks and citation omitted)).

"The applicable standard of review for an evidentiary ruling of the district court where the evidentiary issues relate to a claimed violation of the Sixth Amendment is the *de novo* standard." *United States v. Robinson*, 389 F.3d 582, 591-92 (6th Cir. 2004) (citing *United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993) ("Because, here, the

---

**2**Portions of the transcript are missing from the records transmitted on appeal, but only five pages separate the district court's denial of the Rule 29 motion and the court's statement that the proofs had been closed. It thus appears that Defendant did not offer any evidence and the case went directly to the jury after the Government's case.

evidentiary issues relate to a claimed violation of the Sixth Amendment . . . we review the district court's rulings de novo.")).

## 2. Hearsay Rulings

Defendant first challenges the admission of the statements made by the unidentified woman to Officer LaFave. Defendant contends that the statements were improperly admitted, relying on Federal Rule of Evidence 802, which provides that hearsay is not admissible except under certain exceptions. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c); *see also United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008).

The district court ruled before trial, in response to Defendant's motion in limine, that the woman's statement could be admitted because it was being offered not to prove the truth of the matter asserted, but to aid in understanding the officers' subsequent actions. "In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs,* 506 F.3d 479, 486-87 (6th Cir. 2007) (quoting *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990)). In *Gibbs*, the agent's testimony–that he had been told by another that Gibbs "had some long guns, shotguns and/or rifles hidden in his basement bedroom"–was offered "solely as background evidence to show why Gibbs's bedroom was searched. Whether Gibbs had long guns, shotguns, or rifles in his bedroom was not offered for its truth, because the testimony did not bear on Gibbs's alleged possession of the .380 Llama pistol with which he was charged." *Id.* at 486-87.

Similarly, in this case, LaFave testified that after being flagged down, he immediately broadcast the information the woman reported about Defendant having been seen in a particular car with a particular license plate number and carrying a gun. The statement by the woman was offered not to prove that Defendant was riding in a certain car, or prove that the car bore a certain license number, or that Defendant was, in fact, in possession of a particular firearm. The testimony, rather, was deployed almost

surgically to establish that LaFave had broadcast exactly the information the woman gave him, and the influence that the police broadcast appeared to have on Defendant's subsequent actions:

> Q:     Why were you looking for the defendant that day in a light blue or gray small car with that license plate number?
>
> A:     I had been stopped earlier in the day.
>
> Q:     Who stopped you earlier in the day?
>
> A:     A female.
>
> Q:     A female?  Do you know who it was?
>
> A:     No.
>
> Q:     All right.  And what happened when that woman stopped you that caused you to be looking for the defendant in that vehicle with license plate BEW 7533?
>
> A:     She told me the subject was in that car with a gun.
>
> . . . .
>
> Q:     Okay.  Now when you received this information, did you report that information over your radio to your dispatch?
>
> A:     Yes, I did.

(J.A. 113-115.)  Officer LaFave also testified that the information reported to dispatch included the name of Thomas Davis, a description of the car, the license plate number BEW 7533, and that Davis had been seen with a gun.  In addition, Officer LaFave confirmed that the information was broadcast over the police radio, and that "if someone had a police scanner [and was listening], they would have heard that information."

This testimony, read in context, fairly precisely provides an explanation of what Defendant subsequently did and said that afternoon: midway through his ride in and around the neighborhood, Defendant entered and soon emerged from a house saying that "somebody called the boys on us." A short while later, Defendant announced his plan to exchange the Chevy Cobalt for another. A logical inference is that Defendant had access to a police scanner–perhaps in the house he visited– and came to know that local officers thought he had a gun and were actively searching for him in a particular car.

The woman's statement was not offered to prove the truth of its content. It explained (perhaps only incidentally) what the officer did and, more importantly, it established a foundation for the evidence about the visit to the house that would demonstrate Defendant's actions and culpable state of mind. In short, the jury was properly invited to focus on Defendant's reaction to the statement, not the "truth" of its substance.[3]

"The truth of the matter asserted" in the woman's statement, either as it was reported to LaFave or repeated by him in the broadcast, was of no consequence to the significance of what Defendant apparently thought and how he was seen to react after hearing that the statement had been uttered. We agree with the district court's conclusion that the statement did not constitute hearsay. The record before us does not reveal how (or even whether) the district court cautioned the jury about the limited scope of this testimony as the Government suggested would be necessary,[4] but we also have been presented with no contemporaneous objection to the trial testimony–only the pretrial motion in limine that was denied. Nor, we note, is there any argument now offered by Defendant that the court further erred in the manner it handled the evidence once the motion in limine had been overruled. We sustain the ruling admitting this evidence.

Defendant next challenges the admission of the contents of the 911 call. The district court held that the 911 call was admissible as both an excited utterance and a present sense impression. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Here, McIntosh testified

---

[3] Admitting into evidence an anonymous citizen's statement such as this could also help render understandable what might otherwise make no obvious sense to a jury (and which could, without explanation, appear to be some kind of unsavory or illegal targeting of a suspect ). *See United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("There are no doubt times when the testimony regarding a tip from an informant is relevant. If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out Silva for nefarious purposes."). A statement such as the one given to LaFave can help to explain the common-sense, legitimate reason that an officer, with or without first making a radio report, set out to look for a suspect with a gun in a specific car.

[4] In arguing against Defendant's motion in limine, the Government stated ,"So we would intend to offer it and of course the Court would have to give a cautionary instruction, but it would be offered not for the truth of the matter asserted." (J.A. 22-23.)

that she made the 911 call within thirty seconds to a minute after seeing Defendant. This 911 call, made "immediately []after" witnessing the described event, is not distinguishable from one that was contemporaneous with the event itself. It meets the definition of a present sense impression under Rule 803(1).[5] *See United States v. Parker*, 936 F.2d 950, 954 (7th Cir. 1991) (holding that statements made about an event after walking approximately 100 feet or so qualified as a present sense impression under Rule 803(1)).

The district court held that the statements made during the 911 call were also admissible as an excited utterance.[6] An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(3). The district court had "some difficulty" fitting the 911 call within the rubric of an excited utterance and we agree that the statement better fits the present sense impression exception. "The excited utterance exception is based on the belief that the statement is reliable because it is made while the declarant is under the stress of excitement. It is unlikely that the statement is contrived or the product of reflection." *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983). This circuit has held that there are three elements for establishing admissibility as an excited utterance. "First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event." *Haggins*, 715 F.2d at 1057.

---

[5]Although McIntosh told the dispatcher it had been five minutes since she saw Defendant, she later testified that this was incorrect and it had only been between thirty seconds and one minute. Under either scenario, within the context of witnessing a known acquaintance with a firearm, the statements were made "sufficiently contemporaneous to satisfy the requirements of Rule 803(1)." *Parker*, 936 F.2d at 954.

[6]Both parties state that the district court allowed the statement as an excited utterance, but the transcript is unclear as to whether the court allowed the statement under both exceptions, or just as a present sense impression. The transcript seems to suggest that the court considered both exceptions, but ruled that the testimony fit under the present sense impression exception rather than the excited utterance exception. Nonetheless, because the parties both assert that the district court found the statements admissible as an excited utterance, we will address this issue as well.

Here, McIntosh testified that she saw Defendant with a gun and that she was scared because she thought that Defendant had been involved in a murder which had recently occurred. McIntosh walked quickly away because she felt responsible for taking care of the small children in her custody and soon thereafter called 911. Under these circumstances, the 911 call meets the first and third *Haggins* elements. Seeing a person with a gun who is thought to have been involved in a murder is a startling event sufficient to meet the first *Haggins* element, particularly when he was seen while McIntosh was accompanying children for whom she felt responsible. She made the statement soon enough after the event to satisfy the third prong of the *Haggins* test, where she was still under the stress of the event. Under *Haggins* and its progeny, it does not matter whether the call was made thirty seconds or five minutes after witnessing the event. "[O]ur cases do not demand a precise showing of the lapse of time between the startling event and the out-of-court statement. The exception may be based solely on '[t]estimony that the declarant still appeared nervous or distraught and that there was a reasonable basis for continuing [to be] emotional[ly] upset.'" *United States v. Arnold*, 486 F.3d 177, 185 (6th Cir. 2007) (en banc) (alterations in original) (quoting *Haggins*, 715 F.2d at 1058)).

There is some question as to whether the 911 call meets the second prong of the *Haggins* test, that is, whether the statement was made before there was time to contrive or misrepresent. Despite the small amount of time between witnessing the event and the 911 call, there were certain acknowledged "exaggerations" in McIntosh's 911 call. McIntosh told the 911 dispatcher that Defendant had two guns, instead of the one she testified to, and she told the dispatcher it had been five minutes since she saw him, not the mere thirty seconds to one minute she later was to relate under oath. These exaggerations, however, do not preclude the applicability of the excited utterance exception under *Haggins's* second prong. As this circuit has previously held, "a statement that satisfies all of the elements of our test for excited utterances meets the threshold for admissibility under Rule 803(2), even though its reliability might be subject to challenge on such grounds as inconsistency with subsequent statements or the speaker's motive to fabricate." *United States v. Hadley*, 431 F.3d 484, 498 (6th Cir.

2005). Here, the statement meets the second *Haggins* prong because McIntosh made the 911 call only moments after witnessing the event. The fact that she later stated she made "exaggerations" goes to the weight, not the admissibility of the 911 call. *See id.* ("Any challenges to the reliability of these statements would go to their weight rather than their admissibility . . ."). Thus, we conclude that the 911 call was properly admitted as an excited utterance as well as a present sense impression, and we uphold the district court's ruling.

### 3. Confrontation Clause

Defendant contends that admission of the unidentified woman's statements violate the Confrontation Clause of the Sixth Amendment. We disagree. It is true that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 68 (2004). "The admission of a testimonial statement, however, does not necessarily trigger a violation of the Confrontation Clause." *Gibbs*, 506 F.3d at 486 (citing *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005)). Instead, to constitute a Confrontation Clause violation, "the statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted." *Id.* (citing *Pugh*, 405 F.3d at 399). As explained above, the statements made by the unidentified woman were not offered to prove the truth of the matter asserted, but only as background for LaFave's investigation. *See id.* (holding that introduction of background evidence to show why a location was searched did not violate the Confrontation Clause because it was not offered to prove the truth of the matter

asserted).**7**    Accordingly, the admission of these statements did not violate the Confrontation Clause.

## 4. Harmless Error

Finally, we find that, even if the district court erred in admitting either the 911 call or the unidentified woman's statements to Officer LaFave, any error was harmless. "[A]n error by a district court with respect to the admission of evidence is subject to harmless error analysis, and it is well settled that an error which is not of a constitutional dimension is harmless unless it is more probable than not that the error materially affected the verdict." *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (quoting *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998)). "In determining whether an error is harmless, the reviewing court must take account of what the error meant to the jury, not singled out and standing alone, but in relation to all else that happened." *Gibbs*, 506 F.3d at 485 (6th Cir. 2007) (quoting *United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005)). It is more probable than not that the jury would have reached the same verdict based on other evidence of Defendant's possession of the gun, including McIntosh's live testimony at trial that she actually saw the Defendant riding by flashing a gun, and Officer Wojczynski's testimony that he saw Defendant appear to stuff something under his seat exactly where the gun was later found. In light of this substantially equivalent evidence of Defendant's guilt, we find that any evidentiary errors were harmless. *See United States v. Robinson*, 389 F.3d 582, 593 (6th Cir. 2004) ("This admission was not prejudicial since other substantially equivalent evidence of the same facts had otherwise been admitted into evidence.").

---

**7**The facts of this case are different from those in *United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007). In *Hearn*, the district court had allowed the government to introduce the statements of confidential informants as background information. *Id.* at 483-84. On appeal, the defendant argued, and we agreed, that admission of the statements violated his Sixth Amendment right to confront witnesses. *Id.* at 484. In *Hearn*, unlike in this case, the witness testified with unnecessary detail and "[t]he excessive detail occurred twice, was apparently anticipated, and was explicitly relied upon by the prosecutor in closing arguments." *Id.* In this case, however, the challenged statement was admitted solely to provide background information and was mentioned only briefly in the Officer's testimony. Moreover, there is no evidence, nor even any allegation, that the statement was in any way exploited as an attempted end-run around the Sixth Amendment. At oral argument, Defendant's counsel conceded that there was little, if any mention of the statements in the Government's closing argument at trial.

**B. Sufficiency of the Evidence**

**1. Standard of Review**

The district court's denial of a motion for acquittal based on sufficiency of the evidence is reviewed *de novo*.[8]  *United States v. Mabry*, 518 F.3d 442, 447-48 (6th Cir. 2008).  "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, we are limited to ascertaining whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (internal quotations and citations omitted) (emphasis in original).  "The appellate court must view all evidence and resolve all reasonable inferences in favor of the government."  *United States v. Hughes,* 505 F.3d 578, 592 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Searan*, 259 F.3d 434, 441 (6th Cir. 2001)).  In doing so, however, the court cannot independently weigh the evidence nor substitute its judgment for that of the jury.  *Id.* (citations omitted).  Thus, "[a] defendant bringing such a challenge bears a 'very heavy burden.'"  *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)).

**2.     Discussion**

To obtain a conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt "(1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or

---

[8]The Government contends that we should review only to determine whether there was a "manifest miscarriage of justice," which is the appropriate standard when a defendant fails to renew a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of all proofs. *United States v. Abdullah,* 162 F.3d 897, 903 (6th Cir. 1998). "A 'miscarriage of justice' exists only if the record is 'devoid of evidence pointing to guilt.'" *Id.* (citation omitted). However, portions of the relevant transcript are missing, and it is unclear from the record what occurred after the original Rule 29 motion, made after the close of the Government's case, was denied. It appears that Defendant did not offer any evidence and the case went directly to the jury after the Government's case. Nonetheless, we need not determine whether a renewed Rule 29 motion was made or whether it was even necessary, because, as discussed below, even under a *de novo* standard Defendant's conviction will be upheld.

affecting interstate commerce." *Schreane*, 331 F.3d at 560 (citing *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998)). Defendant challenges only the second element, whether there was sufficient evidence that he knowingly possessed the firearm. "Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g)." *Schreane*, 331 F.3d at 560 (citing *United States v. Murphy*, 107 F.3d 1199, 1207 (6th Cir. 1997)). "Both actual and constructive possession may be proved by circumstantial evidence." *Id.* (citation omitted).

Defendant argues that no rational jury could find actual or constructive possession because, at most, the Government only proved that Defendant was present near the gun. It is true that "[m]ere presence on the scene plus association with illegal possessors is not enough to support a conviction for illegal possession of an unregistered firearm. Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the unregistered firearms." *United States v. Birmley*, 529 F.2d 103, 107-108 (6th Cir. 1976) (citations omitted). "However, other incriminating evidence, coupled with presence, . . . will serve to tip the scale in favor of sufficiency." *Id.* (citations omitted). In this case, the Government produced ample evidence for the jury to find that Defendant knowingly possessed a firearm. McIntyre testified that she saw and recognized Defendant, who rode along flashing a gun. The jury could reasonably credit her testimony, especially in light of Officer Wojczynski's testimony. Officer Wojczynksi testified that after they stopped the PT Cruiser, he saw Defendant appear to stuff something under his seat and that when he searched the car he found the gun exactly where Defendant was observed to be reaching. Defendant offers various theories about why this evidence should be discounted – for example, that any of the four occupants in the vehicle could have been responsible for the gun, and that Defendant could have been throwing only the marijuana under the seat and not the gun. While these and other possible theories may be inventive or interesting, they are unavailing since we must draw all reasonable inferences in favor of the government. *Hughes,* 505 F.3d at 592. Indeed, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except

that of guilt.'" *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

The evidence of Defendant's guilt was abundant. Any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Carmichael*, 232 F.3d at 519 (6th Cir. 2000) (quoting *Jackson*, 443 U.S. at 319).

### III.  CONCLUSION

Defendant's conviction is **AFFIRMED.**