NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0132n.06

Case No. 25-1049

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 12, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ELIJAH CHAPPELL, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. On a May evening in 2023, officers responded to a series of 911 calls reporting that a man was threatening people and shooting a gun. Upon arriving on the scene, officers heard a series of additional shots ring out from inside a residence. A witness identified the shooter as Elijah Chappell, a convicted felon. After a two-hour standoff, officers breached the front door; Chappell surrendered and was arrested. Officers secured a warrant and searched the residence. Inside, they recovered scattered parts of a disassembled semiautomatic rifle, ammunition, and a spent shell casing. Outside, they found additional shell casings. A jury later convicted Chappell of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). The district court sentenced him to 120 months' imprisonment. Chappell now presses five challenges to his trial proceedings, conviction, and sentence. Finding no error, we affirm.

I

A

At around 9:30 p.m. on May 20, 2023, 911 dispatchers received four separate calls reporting a potential shooting at 9401 Hartwell Street in Detroit, Michigan. The first caller reported that a drunk man with a gun was fighting a group of children and that the man had fired shots. The caller repeatedly begged the dispatcher to send someone to the scene. Not a minute later, a second caller reported that his neighbor was shooting a gun near the side of his house. And just a few minutes after that, a group of children called to report that a 42-year-old man had assaulted a 13-year-old girl, that he had a gun and was "shooting our house up," and that the shooter had fought his own brother. 911-Call Tr., R.29-4, PageID 76. Another caller reported hearing five gunshots, stated that the shooter was beating up a woman, and further reported that a person was lying in the street. Two of the callers identified the shooter as a light-skinned black man with an afro.

Officers Haley Hebner and Joel Ochoa headed to the scene. Before they arrived at 9401 Hartwell Street, however, they were flagged down in a nearby parking lot by a group of children who were screaming and waving their hands for the officers to stop. The children—between crying and speaking over one another—confirmed that a gun had been fired. So Hebner called for backup. The children told Hebner that the shooter's name was Elijah and that they saw him go to the basement of 9401 Hartwell Street. Moments later, Hebner heard gunfire coming from the vicinity of 9401 Hartwell Street.

Meanwhile, Ochoa checked on a man who was lying in the street and bleeding from both his arms and his face. That man turned out to be Corliss Chappell, Elijah Chappell's brother. Ochoa also heard the gunshots, and he was sure that they came from inside 9401 Hartwell Street.

Backup arrived and the officers established a perimeter around the house. Several officers observed a man with an afro-style haircut—later identified as Chappell—approach the front doorway to 9401 Hartwell Street. Officers ordered Chappell to exit the premises, but he refused to comply. Officers then declared a "barricaded gunman" situation. Trial Tr. Vol. 3, R.81, PageID 881-84. Specialized officers subsequently deployed a "BEAR" and a "BearCat"—armored vehicles designed to push in doors and windows in barricaded-gunman situations—to ram open the front door of 9401 Hartwell Street. *Id.* at PageID 968-69, 973-75, 989. Chappell finally surrendered, hours after Hebner and Ochoa were first dispatched, and was taken into custody.

Another officer obtained a warrant to search 9401 Hartwell Street for firearms and ammunition. The warrant affidavit explained that Hebner had encountered a group of children who directed officers to 9401 Hartwell Street and informed officers that a man inside was assaulting someone and was armed with a gun. It also stated that Hebner heard gunfire coming from within 9401 Hartwell Street and that Chappell barricaded himself inside for hours. And the affidavit stated that Chappell had a criminal history, including a felony conviction that disqualified him from possessing a firearm, and multiple unprosecuted reports of domestic assault.

When officers executed the warrant, they discovered a partially disassembled assault rifle in a bedroom closet; they found the remaining missing pieces—a dust cover, recoil spring, and bolt carrier—in the basement. Officers also recovered shell casings in the front yard near the side of the house as well as another shell casing inside the house next to the refrigerator. A ballistics expert later reassembled the firearm using the component parts recovered at 9401 Hartwell Street. After comparing the shell casings found at 9401 Hartwell Street with the casings from several test shots from the now-assembled firearm, the expert concluded that the recovered casings must have

come from the disassembled firearm found on the premises. And a forensic DNA analyst tested a blood sample taken from the firearm and concluded that it matched Chappell's DNA.

B

A grand jury indicted Chappell for possessing a firearm and ammunition after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

In the lead up to his trial, Chappell made several unsuccessful motions to dismiss his indictment, suppress evidence obtained during the execution of the search warrant, and exclude the 911 calls and body-camera footage from trial. *First*, Chappell filed a motion to dismiss his indictment, arguing that § 922(g)(1) is facially unconstitutional under the Second Amendment after the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The district court rejected that motion based on binding Sixth Circuit precedent.

*Second*, Chappell filed a motion to suppress the evidence seized from 9401 Hartwell Street, alleging that the search-warrant affidavit contained false and reckless misrepresentations that were necessary to provide probable cause for the officers' search. The district court rejected Chappell's motion. It reasoned that the affidavit was "more than sufficient" to establish probable cause for the search even without the statements that Chappell challenged. Order Den. Mot. to Suppress, R.51, PageID 218-19.

*Third*, Chappell filed a motion in limine to exclude the 911 calls and officers' body-camera footage. Because many of the witnesses whose statements appear in the calls and footage were not set to testify at trial, Chappell argued that the evidence contained inadmissible hearsay, was unduly prejudicial, and violated his rights under the Confrontation Clause of the Sixth Amendment. The district court rejected each of Chappell's arguments. The court explained that, even assuming the 911 callers' statements were hearsay, they fell within the exception for present-

sense impressions, Fed. R. Evid. 803(1). Similarly, the court concluded that the 911 callers' statements were non-testimonial because the purpose of those calls was to obtain assistance in an ongoing emergency, not to replace trial testimony. And the court found that Chappell's bare allegations of prejudice did not outweigh the evidence's clear probative value. Finally, the district court denied Chappell's wholesale challenge to the body-camera footage as too vague. The district court later admitted the 911 calls and body-camera footage at trial over Chappell's objection.

After the government rested its case, Chappell moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. In ruling on the motion, the district court explained that Chappell stipulated to three of the four elements of his offense, leaving only the question whether Chappell knowingly possessed a firearm. As to that element, the district court concluded that the government had presented more than enough evidence for a reasonable juror to find Chappell guilty, including: that officers heard gunshots from within 9401 Hartwell Street; that officers saw Chappell walking around inside the house and declared him a barricaded gunman; that officers found disassembled pieces of a rifle inside the home and shell casings both in and outside the home; and that Chappell's DNA was on the firearm components found in the home.

The jury found Chappell guilty. Chappell then moved for a new trial, arguing that the government presented insufficient evidence and reasserting his constitutional challenge to § 922(g). The district court denied the motion.

Over Chappell's objections, the district court applied two enhancements to his Sentencing Guidelines' calculation. *First*, the district court applied a four-level enhancement to Chappell's base offense level for possessing a firearm "in connection with another felony offense" under

U.S.S.G. § 2K2.1(b)(6)(B) (2024).[1]  *Second*, the district court applied a two-level obstruction-of-justice enhancement under U.S.S.G. § 3C1.1.  That enhancement followed from the district court's conclusion that Chappell had obstructed the investigation of his offense by attempting to disassemble and hide the rifle later recovered (in pieces) at the shooting scene.

Based on those enhancements, the district court calculated a Guidelines' range of 92-115 months, and the district court varied upward to impose a sentence of 120 months' imprisonment, followed by three years of supervised release.  Chappell timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

## II

On appeal, Chappell contests the district court proceedings on five grounds.  First, he contends that the district court should have ordered a hearing to assess what Chappell sees as flaws with the search warrant for 9401 Hartwell Street.  Second, he asserts that the district court erred by admitting the contents of the 911 calls and the officers' bodycam recordings into evidence. Third, he seeks acquittal as a matter of law or a new trial.  Fourth, he challenges the felon-in-possession statute, 18 U.S.C. § 922(g)(1), as facially unconstitutional under *Bruen*.  And last, he argues that the district court erred in applying the two sentencing enhancements.  We address, and reject, each line of argument in turn.

## A

Chappell first contests the validity of the warrant police secured prior to searching 9401 Hartwell Street and recovering the disassembled rifle and other evidence.  He claims that the search warrant affidavit, submitted by Lieutenant Tharadrous White, contained a series of false

---

[1] In the 2025 version of the Sentencing Guidelines, this provision appears at U.S.S.G. § 2K2.1(b)(7)(B).  We cite to the provision as it appeared in the 2024 Sentencing Guidelines, which were in effect at the time of Chappell's sentencing.  *See United States v. Welch*, 689 F.3d 529, 532-33 (6th Cir. 2012).

allegations that White made with extreme recklessness. To give one example, Chappell targets White's statement that a child witness told Hebner "that their father was assaulting their mother." Chappell Br. 14 (quoting Warrant Aff., R.42, Page ID 157). In reality, the children's statement that Chappell "started putting her hands, his hands on her," and "started fighting everybody" instead meant to reference Chappell's altercation with a girl named "Neveah." Bodycam Tr., R.29-6, PageID 81. Based on that statement and others asserted errors in White's affidavit, Chappell argues that the district court should have suppressed evidence obtained from 9401 Hartwell Street—or at a minimum ordered a hearing to assess the affidavit's validity under *Franks v. Delaware*, 438 U.S. 154 (1978).

Chappell's *Franks*-based argument fails. For Chappell to prevail, he must do more than make a "substantial preliminary showing" that the warrant affidavit contains intentional or reckless misrepresentations. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (citation omitted). He also must prove that any allegedly "false statement or material omission" was "necessary to the probable cause finding in the affidavit." *Id.* Probable cause is present when there "is a fair probability or a common-sense inference that evidence of criminal activity will be found." *United States v. Long*, 155 F.4th 829, 838 (6th Cir. 2025) (cleaned up). That is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Given that framework, we need not parse each of the statements that Chappell now challenges (nor address the government's argument that Chappell forfeited reliance on certain statements by failing to cite them below). That is because, reviewing the district court's probable-cause determination de novo, *see Bateman*, 945 F.3d at 1007, we agree that the affidavit established probable cause even excluding the challenged statements.

Stepping through the affidavit's remainder shows why. Even spotting Chappell his objections, the affidavit still accurately recited sufficient facts to establish probable cause to search the residence where Chappell was apprehended. Those facts include: that Officer Hebner was flagged down by children who left the scene after shots were fired; that Chappell opened the front door of the residence but then refused to show his hands to officers, retreated back, and barricaded himself; that police records identified the person inside 9401 Hartwell Street as Chappell; that a barricaded gunperson was declared; that Chappell remained inside 9401 Hartwell Street for approximately two hours before surrendering; and that Chappell had a prior felony conviction and was thus "disqualified" from "possessing a firearm." Warrant Aff., R.42, PageID 157. Together, those statements demonstrated a "fair probability," *Long*, 155 F.4th at 838, that "firearms and firearm evidence (spent casings)," Warrant Aff., R.42, PageID 157—both relevant to Chappell's unlawful possession of a firearm—would be found at 9401 Hartwell Street. So Chappell's *Franks* argument fails.

B

Chappell next contests the district court's decision to admit, over his objection, statements derived from four 911 calls and body-camera footage from officers at the scene. Tracking his objections before the district court, Chappell argues on appeal that (1) the admission of the evidence violated his Confrontation Clause rights; (2) the evidence contained inadmissible hearsay; and (3) the evidence's probative value was substantially outweighed by the risk of prejudice.

This Court has not always been consistent regarding the standard of review applicable to evidentiary rulings that implicate constitutional arguments.[2] We need not resolve any ambiguity in our caselaw here, however, because the district court did not err in admitting the contested evidence under any standard of review.

Chappell's argument for excluding the 911 calls and the body-camera footage stumbles out of the gate. That is because Chappell fails to identify any specific statement that he deems objectionable. Instead, Chappell appears to attack en masse the four 911 calls and all of the body-camera footage—from at least nine different officers—admitted at trial. But this Court cannot appropriately assess whether any given statement is testimonial hearsay without an indication of the statements that we are to examine. Nor is it our responsibility to "put flesh on [the] bones" of Chappell's "skeletal" argument when he failed to fill it out himself. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted). Confronting that disconnect, the district court construed Chappell's motion in limine to challenge only the exhibits in the government's response—including the four 911 calls and the first ten minutes of Hebner's and Ochoa's body-camera footage in which they interact with the children in the parking lot. Chappell does not object to that framing on appeal. So we follow suit in limiting the scope of our review of the evidentiary issues.

*The Confrontation Clause*. Chappell first contends that the 911 calls and body-camera footage contain testimonial statements that violate his rights under the Confrontation Clause. The Confrontation Clause guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. With a few

---

[2] *Compare United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) (abuse-of-discretion review), *with United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993) (de novo review), *and United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) (both de novo and abuse-of-discretion review).

exceptions, the Confrontation Clause prohibits the government from introducing testimonial hearsay statements against criminal defendants. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). A statement is testimonial if, "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)) (alteration adopted). By contrast, a statement is nontestimonial if objective circumstances indicate that "the primary purpose of the [statement] is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also United States v. Lundy*, 83 F.4th 615, 620-21 (6th Cir. 2023).

The statements Chappell challenges are nontestimonial. Start with the 911 calls. Those calls were made by children, neighbors, and bystanders who reported that a man was actively shooting near 9401 Hartwell Street. Three of those callers reported that the shooter was assaulting people, and one caller stated that a person the shooter had beaten was "layin[g] in the street." 911-Call Tr., R.29-5, PageID 77. One caller reported that the shooter was drunk, and someone in the background begged the dispatcher to "[h]urry up." 911-Call Tr., R.29-2, PageID 70-71. Each caller "'was speaking about events *as they were actually happening*,'" rather than "describing events 'hours' after they occurred." *United States v. Arnold*, 486 F.3d 177, 188 (6th Cir. 2007) (en banc) (quoting *Davis*, 547 U.S. at 827). The callers faced "'an ongoing emergency,'" prompting them "to make 'a call for help against [a] bona fide physical threat.'" *Id.* (quoting *Davis*, 547 U.S. at 827). And several of the callers—particularly the children—were frantically reporting from "'an environment that was not tranquil, or even . . . safe.'" *Id.* (quoting *Davis*, 547 U.S. at 827). Objective circumstances thus establish that the primary purpose of the 911 calls "was

to enable police assistance to meet an ongoing emergency"—not to pin a crime on a defendant or create a trial-testimony substitute. *Davis*, 547 U.S. at 828.

The same goes for the body-camera footage. That footage depicts a group of children who are visibly scared, crying, and talking over one another. The children told Hebner and Ochoa that a drunk man started "fighting everybody," that "he went to get the gun and started letting off bullets," and "started fighting his brother to death." Bodycam Tr., R.29-6, PageID 81. They said this man was still in the house, possibly with a woman named "Neveah," whose location they repeatedly and concernedly asked about. *Id.* at PageID 83. Confirming that "the 'exigency of the moment'" had not "ended," *Arnold*, 486 F.3d at 189 (quoting *Davis*, 547 U.S. at 827), several more gunshots then rang out, prompting the officers to tell everyone to "get away now." Bodycam Tr., R.29-6, PageID 84. The "arrival of the officers" thus, did not "end[] the emergency." *Arnold*, 486 F.3d at 190. And even after their arrival, officers asked questions like, "What happened?"; "Were any shots fired there?"; "Who has a gun?"; and "Is anybody shot?" Bodycam Tr., R.29-6, PageID 80-81. Those statements demonstrate an intent to "clarify[] the extent of the emergency and obtain[] information necessary to resolve it." *Arnold*, 486 F.3d at 191.

In short, the 911 calls and body-camera statements are nontestimonial because they reflected a primary purpose of reporting and responding to an ongoing emergency. So the Confrontation Clause did not bar their admission.

*Hearsay*. Nor did the challenged statements constitute inadmissible hearsay. The Federal Rules of Evidence generally exclude hearsay evidence—an out-of-court statement offered to prove the truth of the matter asserted—from admission at trial. Fed. R. Evid. 801(c). There are exceptions, though, for certain hearsay statements "'made under circumstances that tend to assure reliability.'" *Lundy*, 83 F.4th at 618 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 299 (1973)).

One such exception covers present-sense impressions—statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Another covers excited utterances—statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).

The statements in the 911 calls and the body-camera footage qualify for both hearsay exceptions. As explained, the 911 callers and the witnesses in the body-camera footage were contemporaneously describing the startling and dangerous events that had just transpired. And many of the speakers were scared and pleading for law-enforcement assistance. Supreme Court precedent confirms that "911 calls that would otherwise be inadmissible hearsay have often been admitted" under the excited-utterance and present-sense-impression exceptions because "[t]hat sort of contemporaneous report has long been treated as especially reliable." *Navarette v. California*, 572 U.S. 393, 399-400 (2014). The same goes for statements recorded in body-camera footage during an ongoing emergency. *See Lundy*, 84 F.4th at 618-20. We have thus applied both hearsay exceptions under similar circumstances. *See United States v. Davis*, 577 F.3d 660, 668-70 (6th Cir. 2009). The district court did not err in denying Chappell's hearsay challenge.

*Rule 403*. Finally, Chappell argues that the district court should have excluded the 911 calls and body-camera footage under Federal Rule of Evidence 403 because "the prejudicial effect far outweighed any admissible purpose." Chappell Br. 22. "Rule 403 provides a 'balancing test for excluding relevant evidence.'" *United States v. Baskerville*, 164 F.4th 459, 491 (6th Cir. 2026) (quoting *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018)). There is a thumb on the scale in favor of admission; evidence should be excluded "only when its probative value is *substantially outweighed* by a danger of unfair prejudice." *Id.* (cleaned up). What's more, any prejudice from the contested evidence must be unfair to warrant exclusion. "Testimony is not prejudicial under

Rule 403 simply because it provides powerful evidence that the defendant committed the charged crimes." *United States v. Harvel*, 115 F.4th 714, 737 (6th Cir. 2024) (citation omitted). Rather, Chappell "must show that the evidence might lead the jury to convict for an *inappropriate* reason," *id.*—"such as a ground 'different from proof specific to the offense charged.'" *Baskerville*, 164 F.4th at 492 (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

The district court did not err in finding that the 911 calls and body-camera footage are not substantially more prejudicial than probative of Chappell's guilt. That evidence—including contemporaneous statements that Chappell "got a gun," and was "blowin' the gun," R.29-2, PageID 71; was "shooting a gun," R.29-3, PageID 73; was "shooting our house up and everything," R.29-4, PageID 76; and had fired at least five shots, R.29-5, PageID 77—is highly probative of whether Chappell knowingly possessed a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1). Chappell has offered no argument for why that evidence creates a danger of "unfair" prejudice, let alone why that prejudice is "substantial[]." Fed. R. Evid. 403. Indeed, Chappell provided nothing more than a conclusory statement that "the prejudicial effect" of the "smorgasbord of anonymous statements" "far outweighed any admissible purpose," without any indication why. Chappell Br. 22. That does not suffice to prevail on his Rule 403 challenge.

C

Chappell next contends that the evidence entitled him to a judgment of acquittal under Federal Rule of Criminal Procedure 29 or a new trial under Federal Rule of Criminal Procedure 33. The government responds that Chappell's brief references only his motion for a new trial under Rule 33, not his Rule 29 motion. And it appears that Chappell did "inadvertently" fail to cite the district court's denial of his oral motion for a new trial under Rule 29, made at the close of the government's case. Chappell Reply 2. But in both motions, Chappell attacked his § 922(g)(1)

conviction by arguing that the trial evidence failed to show that he possessed the rifle. Whether assessed under Rule 29 or Rule 33, Chappell's claim cannot surmount the trial evidence.

As for Chappell's Rule 29 argument, "[w]e review de novo the sufficiency of the evidence to sustain a conviction." *United States v. Fairley*, 137 F.4th 503, 511 (6th Cir. 2025) (citation omitted). In so doing, we assess whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When conducting that assessment, we must view the evidence "in the light most favorable to the prosecution," *Baskerville*, 164 F.4th at 472 (citation omitted). Rule 33(a), for its part, permits a district court to grant a new trial when "the jury's verdict was against the manifest weight of the evidence." *United States v. Robinson*, 99 F.4th 344, 367 (6th Cir. 2024) (cleaned up). Neither standard is met here.

Recall that Chappell stipulated to three of the four elements of his charged offense. As a result, the only disputed element at trial was whether Chappell knowingly possessed a firearm or ammunition. And on the possession issue, evidence abounded. To recap: Several of the 911 callers gave a description of the shooter that matched Chappell; the group of children said the shooter's name was "Elijah" and that he was inside the house at 9401 Hartwell Street, Trial Tr. Vol. 2, R.80, PageID 759-60; Bodycam Tr., R.29-6, PageID 83; officers at the scene subsequently heard gunshots coming from within 9401 Hartwell Street; numerous officers saw Chappell inside the house; a disassembled firearm and expelled shell-casings were found in and around 9401 Hartwell Street; and blood found on the disassembled firearm matched Chappell's DNA.

In response, Chappell throws a variety of other arguments at the wall. For instance, Chappell asserts without support that officers might have planted evidence inside 9401 Hartwell Street to frame him. But neither that charge, nor any of Chappell's other unsupported allegations,

can overcome the ample evidence indicating that Chappell possessed a rifle—found in pieces and bearing his DNA—at 9401 Hartwell Street. The district court did not err in declining to grant Chappell a new trial or an acquittal as a matter of law.

D

Chappell next asserts that his statute of conviction—18 U.S.C. § 922(g)(1)—is facially unconstitutional under *Bruen*. We review that challenge de novo. *See United States v. Risner*, 129 F.4th 361, 364 (6th Cir. 2025). But here, Chappell acknowledges that his facial argument runs aground on *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), "which applied *Bruen* and held that § 922(g)(1) is not susceptible to a facial challenge," *United States v. Feltus*, 2025 WL 3111303, at *1 (6th Cir. Nov. 6, 2025) (citation omitted). Chappell counters that *Williams* misread *Bruen*. As a three-judge panel, however, we cannot accept Chappell's invitation to "overturn" our precedent in *Williams*. Chappell Br. 29. Our precedent therefore forecloses Chappell's facial challenge.

E

Chappell's final set of arguments contests the district court's 120-month sentence. At issue is the district court's application of two sentencing enhancements. Those enhancements followed, respectively, from the district court's conclusion that Chappell had possessed or used a firearm or ammunition in connection with another felony offense, *see* U.S.S.G. § 2K2.1(b)(6)(B), and obstructed the officers' investigation into his § 922(g)(1) offense, *see id.* § 3C1.1.

Chappell contends that neither enhancement applies. In assessing his challenge, we review the district court's "legal conclusions" in the application of the Sentencing Guidelines de novo and any "fact findings" under the clear-error standard. *United States v. Jackson*, 154 F.4th 422, 427 (6th Cir. 2025). And though our caselaw conflicts over the applicable standard for reviewing

application of the law to the facts for Guidelines-range purposes, *see, e.g.*, *United States v. Thomas*, 933 F.3d 605, 608-09 (6th Cir. 2019), those distinctions make no difference here. Chappell's sentencing arguments lack merit under any arguable standard of review.

1

We start with the district court's application of § 2K2.1(b)(6)(B). That provision directs a four-level enhancement if the defendant "used or possessed any firearm . . . in connection with another felony offense." *Id.* The accompanying Guidelines commentary explains that this enhancement should "apply if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). Relevant here, the commentary in turn defines "[a]nother felony offense" as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1 cmt. n.14(C). To assess this enhancement's application, the commentary directs district courts to "consider the relationship between" the firearms offense and the other felony offense "consistent with relevant conduct principles." *Id.* § 2K2.1 cmt. n.14(E). The government needs to prove the requisite felony-offense connection by a preponderance of the evidence. *See United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020); *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014).

At the sentencing hearing, the government contended that § 2K2.1(b)(6)(B) applied because Chappell had committed at least "two separate felonies" in connection with his firearm possession. Sent'g Tr., R.86, PageID 1397. First, the government claimed that Chappell committed felonious assault against the children present when he fired the rifle. *See* Mich. Comp. L. § 750.82. That crime, the government explains, requires showing only that the relevant conduct would cause a reasonable person to fear bodily harm. And citing Michigan caselaw, the

- 16 -

government says threatening persons with a gun counts. Second, the government submitted that Chappell's firing of the rifle in the residence violated a felony statute prohibiting the intentional discharge of a firearm in "a dwelling or a potentially occupied structure" with "reckless disregard for the safety of any individual." *See id.* § 750.234b(2).

The district court agreed that Chappell's conduct warranted the four-level enhancement under § 2K2.1(b)(6)(B). In explaining that conclusion, the district court stated that Chappell was "accountable for possessing a firearm and ammunition in connection with other felony offenses," including "felonious assault." Sent'g Tr., R.86, PageID 1399. Chappell's counsel then objected that "there was no evidence that a firearm was discharged in the home." *Id.* at PageID 1400. The district court overruled that objection, citing the trial "testimony" and "exhibits." *Id.*

On appeal, Chappell does not dispute that the two cited state-law offenses were each a "felony offense" for the purposes of § 2K2.1(b)(6)(B). Nor does he offer any legal argument that the conduct the government identified—namely, firing the rifle near children and inside a home— failed to satisfy the elements of each offense. Instead, Chappell disputes that the evidence showed that he in fact had a "gun," "actually fired" the gun "in the home," and assaulted a minor. Chappell Br. 31-32. But as the district court recited, the trial "testimony" and "exhibits" comprised evidence that Chappell "retrieved a firearm and fired shots outside the residence," "fire[d] the rifle while outside," and "had a firearm"; the officers' account that they "heard multiple gunshots being fired from inside a residence"; and shell casings and other physical evidence supporting that Chappell had discharged the rifle in the home. Sent'g Tr., R.86, PageID 1382, 1400, 1424-25. Those same materials, moreover, include 911 calls from children who (1) reported that Chappell was "shooting a gun inside the house" and "fighting . . . kids," (2) pleaded for immediate police assistance, and

(3) screamed when additional shots were "fired." 911-Call Tr., R.29-2, PageID 71; Bodycam Tr., R.29-6, PageID 80-81, 84.

Chappell disagrees with the district court's reading of the evidentiary record. But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985). Given the evidence, the district court did not err, let alone clearly, in applying § 2K2.1(b)(6)(B).

2

We now turn to the district court's application of the obstruction-of-justice enhancement under § 3C1.1. That enhancement applies when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction," and "the obstructive conduct related to" the defendant's "offense of conviction." U.S.S.G. § 3C1.1.

Chappell contends that some of his conduct—like his choice not to immediately surrender to the officers—was more akin to avoiding arrest. Continuing, he points out that avoiding arrest typically falls outside of § 3C1.1. *See id.* § 3C1.1 cmt. n.5(D). But Chappell's argument, even if accepted, would not warrant setting aside the enhancement. That is because the district court independently cited Chappell's attempted "destroying" of and "tampering with" the recovered rifle as a "big part of the case" that also supported the enhancement's application. Sent'g Tr., R.86, PageID 1398-99. Chappell does not dispute that destroying or attempting to destroy evidence qualifies as obstruction under § 3C1.1. *See* U.S.S.G. § 3C1.1 cmt. n.4(D); *United States v. Cromity*, No. 24-3066, 2025 WL 25133, at *3 (6th Cir. Jan. 3, 2025) (applying that "textbook" rule to destruction of a firearm). Nor does he press any other legal argument for declining to apply that general evidence-destruction rule to the firearm disassembly in his case.

Chappell's response instead boils down to challenging the district court's factual conclusion that Chappell indeed possessed the rifle. As noted above, the district court was entitled to disagree given the plentiful evidence establishing that possession. Chappell's "characterization" of his conduct "at most amounts to a different reading of the trial record," which cannot demonstrate the clear error needed to set aside the district court's factual findings. *Jackson*, 154 F.4th at 430. Because the district court permissibly concluded that Chappell disassembled and then scattered the parts of the firearm that gave rise to his § 922(g)(1) offense, the obstruction enhancement was proper.

\* \* \*

We affirm the judgment of the district court.